### GERMAN SAVINGS & LOAN SOC. v. DE LASHMUTT et al.

#### (Circuit Court, D. Oregon. April 22, 1895.)

#### No. 2,147.

1. VENDOR AND PURCHASER—BONA FIDE PURCHASERS—INSANE GRANTOR.
   A deed of an insane grantor is absolutely void, and therefore a bona fide purchaser from the grantee takes no title.

2. SUBROGATION—BONA FIDE PURCHASERS—INSANE GRANTOR.
   The deed of an insane grantor being absolutely void, the fact that she received and used the consideration for her support and maintenance creates no equity to which a bona fide purchaser from the grantee can be subrogated.

In Equity. Bill by the German Savings & Loan Society against De Lashmutt and others to foreclose a mortgage. The bill was amended, and defendant Starr excepts to the amendments for impertinence.

Milton W. Smith, for plaintiff.
M. L. Pipes, for defendant William Starr.

BELLINGER, District Judge. This is a suit to foreclose a mortgage executed by the defendant De Lashmutt in 1890 to secure the latter's note for $25,000, upon which there is now due, principal and interest, about $26,000. The title of De Lashmutt to a part of the mortgaged premises, consisting of the south two-thirds of lot 3 in block 22

in the city of Portland, is by deed from Bridget Lavin, now deceased, of date about June 7, 1887. The bill of complaint alleges that the defendant Starr claims some interest in the south two-thirds of said lot, which interest arises under a certain deed of De Lashmutt and wife to said Starr, dated April 7, 1893. The defendant Starr answers to the bill that he claims to be the owner in fee simple of the property in question, as heir at law and devisee of Bridget Lavin; and he further answers that at the time of the execution of the deed to De Lashmutt by Bridget Lavin, and for a long time prior and subsequent thereto, she was non compos mentis and insane, and was incapable of executing or acknowledging such deed. The complainant meets this defense by amendments to his bill, alleging, in effect, that at the time it made its loan to De Lashmutt, and took the mortgage in suit, it did so in good faith, without notice or knowledge of the alleged insanity of De Lashmutt's grantor; that De Lashmutt paid Bridget Lavin $10,000, which was a fair price, for the property in controversy, and that the money was used by her for necessary expenses of maintenance and support, and that at the time of such purchase De Lashmutt acted in good faith, and without notice of her alleged insanity; that about April 7, 1893, De Lashmutt and the defendant Starr, "by a good and valid accord and satisfaction, had a full and complete settlement between themselves of all the matters and things then or theretofore in controversy between said De Lashmutt and said Starr, as heir, devisee, and personal representative of said Bridget Lavin, or theretofore in controversy between said De Lashmutt and said Lavin with respect to the ownership and possession of said mortgaged premises; and that then, and in pursuance and consideration therefor, said De Lashmutt executed and delivered to said Starr the deed referred to in the original bill, bearing date April 7, 1893; and that said Starr, in pursuance and consideration thereof, accepted said deed, and went into possession thereunder." The defendant Starr excepts to all these matters so alleged for impertinence.

It is settled that the deed of a person non compos mentis is void. A person incapable of understanding is incapable of executing a contract or deed. Whatever differences of opinion once existed as to whether the deed of an insane person was void or voidable, the question is authoritatively settled that such deed is absolutely void. Formerly the rule in England was that "the deed, feoffment, or grant which any person non compos mentis makes is avoidable"; but even under this rule, which is now no longer accepted, the doctrine was steadily maintained that, as against the heirs of a lunatic, his deed was invalid. Whatever reasons existed for enforcing a contract against the lunatic himself, they were never allowed in any case to apply to his heir. Dexter v. Hall, 15 Wall. 20; Edwards v. Davenport, 20 Fed. 756; Farley v. Parker, 6 Or. 105. The doctrine of bona fide purchase, which the plaintiff invokes, is not a rule of property. It does not determine the question of title between parties. It is only available by way of defense. It is a shield in the hands of a defendant, to

protect him against the claim of his adversary. It means that equity will refuse to interfere to aid the plaintiff in his suit, because, under the circumstances of the case, it would be unconscionable that the plaintiff should have what he seeks to obtain. It enforces no right, but simply refuses to interfere in the plaintiff's behalf. "The very few instances in which affirmative relief is granted to the bona fide purchaser are exceptional. They rest upon their special facts, and arise from the fraud of the defendant against whom the relief is awarded." 2 Pom. Eq. Jur. § 738. Moreover, the doctrine of bona fide purchaser is not applied to protect an equity as against a legal estate, but to "protect the legal title against a prior equity, by uniting with such legal title an equity arising from the payment of money, and securing the conveyance without notice and a clear conscience." Boone v. Chiles, 10 Pet. 211; Mortgage Co. v. Hopper, 56 Fed. 75. "If the defendant has a legal estate, the court does not deprive him, even as against a plaintiff clothed with an equitable interest, of the advantage which the law confers upon the holder of such estate." 2 Pom. Eq. Jur. § 743.

In the present case the plaintiff is without title or lien. It seeks in effect to acquire a lien upon the property of the defendant Starr by invoking the doctrine of bona fide purchaser. It is not claimed that either this defendant or his ancestor committed any fraud or wrong in the premises. The right to relief, as to this defense, rests solely on the ground that complainant and its grantor innocently dealt with the property of another. Such a case is not one for relief upon any principle of equity. When the legal owner is innocent, the claim of a subsequent and bona fide purchaser cannot be sustained. The good faith of a purchaser cannot create a title where none exists. Dodge v. Briggs, 27 Fed. 160. Nor is it material that Bridget Lavin used the $10,000 paid her by De Lashmutt for her maintenance and support. The mere payment of the consideration, without a deed or agreement to convey and such actual performance as would justify a court to decree specific performance, is not enough in any case, and in the case of an insane person the reasons for refusing relief are still more imperative. The complainant relies upon the case of Edwards v. Davenport, 20 Fed. 756. In that case money was advanced to an insane person to pay off certain liens upon his property. It was held that the party advancing such money was entitled to be subrogated to all the remedies which the original lien holder had against the property, but only so far as such were valid pre-existing liens, and were to secure the debt of the insane owner. The liens in question were a lien for taxes and a mortgage to secure the debt of another person. To the extent that the money advanced was used to pay taxes the creditor was subrogated to the rights of a lien holder, but no further. The court said, as to the other lien, that the insane person received no benefit from it. Upon this statement in the opinion the complainant in this case bases its contention that the fact of the receipt of benefits was the decisive point in the case. But such was not the case. The question was simply one of

subrogation under a valid pre-existing lien. There was no contract because of the mental incapacity of the owner to enter into a contract. There was, therefore, as to the mortgage, no lien and no subrogation. But as to the tax lien the case was different. That was a valid pre-existing lien, the discharge of which necessarily inured to the benefit of the owner, whose interests could not be injuriously affected by subrogating the party who paid the money to discharge it to all the remedies of the lien.

It follows from what has already been said that the accounting between De Lashmutt and Starr, relied upon by complainant, cannot be set up against the latter's title. The case admits of but a single question, and that is the question of the mental soundness of the defendant De Lashmutt's grantor. The exceptions are allowed.